IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:12-CV-106-H

PENNY PALMER, executrix for )
the ESTATE OF LIBARDO ANTHONY )
JIMENEZ, JR., Deceased, )
)
    Plaintiff, )
)
)
)
v. )     **ORDER**
)
UNITED STATES AMATEUR BOXING, )
INC. and UNITED STATES OF )
AMERICA, )
)
    Defendants. )

This matter is before the court on defendant the United States of America's ("government") second motion to dismiss [DE #33]. Plaintiff has responded, and the government has replied. This matter is ripe for adjudication.

### BACKGROUND

In March 2012, plaintiff brought suit, on behalf of decedent Limbardo Anthony Jimenez, Jr. ("Jimenez"), in the Superior Court in Onslow County, North Carolina, against United States Amateur Boxing, Inc. ("USAB") and Ronald Simms ("Simms").[1] The complaint seeks relief in relation to Jimenez's death resulting from injury while on the All-Marine Amateur Boxing

---

[1] Plaintiff has not brought any administrative claim in relation to the incidents in the complaint.

Team ("Team"), alleging various negligence claims, wrongful death and breach of fiduciary duty. On May 31, 2012, the government certified that, at the time of the incidents alleged in the complaint, Simms was acting within the scope of his employment on behalf of the United States Marine Corps and substituted itself for Mr. Simms as a proper defendant in this action. See 28 U.S.C. § 2679. The government also removed the case to this court pursuant to the Federal Tort Claims Act ("FTCA").

On June 7, 2012, the government filed its first motion to dismiss for plaintiff's failure to exhaust administrative remedies as required by the FTCA. On March 11, 2013, the court denied without prejudice that motion and directed the parties to conduct limited discovery as to whether Simms was an employee of the Marine Corps who was acting within the scope of his employment at the time of the underlying incidents in this case. After conducting such discovery, the government filed the instant motion, again seeking dismissal.[2]

### STATEMENT OF THE FACTS[3]

#### I. Simms's Employment

In January 2007, Simms applied for the position of Sports Specialist, Amateur Boxing Coach, a flexible position that

---

[2] The instant motion is not brought or joined by defendant USAB.

included no benefits such as annual leave and pension, as boxing coach of the Team.

The position description called for Simms to administer the All-Marine Boxing Program; provide the Athletic Director with recommendation/suggestions for selection on the All-Marine Boxing Team; coach, plan and organize physical fitness programs that condition the boxing team; and, actively recruit Marine boxers. The Marine Corps boxing team, as part of all Marine Corps sports teams, contributes to the Marine Corps readiness. Budget oversight of all Marine Corps sports programs are centrally managed by Marine Corps Headquarters.

On January 31, 2007, Kathleen Rudy, a recruiter in the Human Resources Branch in the Personal and Family Readiness Division notified Simms that the Semper Fit Branch of Personal and Family Readiness Division selected Simms for the position. Employees of the Semper Fit Branch are considered to be government employees. Simms accepted the position, which began on February 12, 2007.

On February 12, 2007, Simms executed an appointment affidavit as a condition of his employment and in that affidavit Simms took an oath to defend the Constitution of the United States and agreed not to take part in any strike against the

---

[3] The court has reviewed the facts as stated in affidavits, depositions, and documentation of employment and policies of the government and USAB, submitted by both parties.

United States. Simms also agreed to abide by the ethical code applicable to all government employees, which included loyalty to the United States, upholding the Constitution, giving the government a full day's labor for a full day's pay, making no private promises because a government employee has no private work, and never using any information gained confidentially in the performance of his duties as a means of making private profit.

Human Resources maintained Simms's personnel file because it considered him to be a federal employee. If Simms were considered an independent contractor, the normal protocol would be for the contracting office to work with Simms and not the human resources office.

In July 2007, Simms's status changed from a flexible employee employed as the boxing coach to a permanent federal employee in the same position. As a new permanent employee, Simms was required to undergo a one-year probationary period, which ended on February 11, 2008.

The Marine Corps informed Simms that as a full-time employee he was eligible to participate in the employee benefit plan. Personnel records also established that Simms became a full-time employee and elected employee benefits that included life insurance, supplemental life insurance, received pay increases, and later elected to participate in the 401k plan.

4

The Marine Corps liability insurance covered Simms as an employee. Therefore Simms was not required to carry his own liability insurance, as an independent contractor would have been required to do.

Simms accomplished his duties with some supervision from Sid Meyerson ("Meyerson"), the Camp Lejeune Athletic Director employed by the government, and in communication with Headquarters staff. The Marine Corps retained the power to approve or disapprove Marines applying for positions on the Team. The Marine Corps also provided the boxing team supplies and funds for the travel.

According to affidavits of team members filed by the plaintiff, Simms made all decisions regarding the management, oversight and day-to-day operations of the Team, including where and when they would practice, what safety gear was utilized, what drills were performed, what fights the Team would attend as well as who participated in practices, including allowing military personnel who were not on the Team and not stationed at Camp Lejeune and civilians to participate in practices. He also regulated such matters as the team members' outside workouts and diets.

The Team followed the rules and regulations of USAB and the mandates of its official rule book. The Team paid annual membership dues to USAB.

Simms answered to Meyerson at the time of the incident with Jimenez, and was disciplined by the government in relation to Jimenez's death.

## II. Jimenez's Injury and Death

Jiminez was a Lance Corporal in the United States Marines. After his return from deployment in Iraq in January 2010, he was stationed at Camp Lejeune and decided to apply for membership on the Team, which had been one of his long-time goals. After receiving permission from his unit command, he had to complete an application and "try out" for the Team's coach, Simms. Although Jiminez had no previous boxing experience or training, he was accepted on the Team and placed on a ninety-day probationary period. Jiminez registered for membership in USAB and paid a registration fee.

On February 27, 2010, Jiminez suffered a nose injury during a Team practice that caused him to experience respiratory problems. Jiminez was seen by several physicians before he was released from sick call and placed on full duty on March 11, 2010. Simms scheduled Jiminez to fight in a Golden Glove tournament on March 25, 2010. On March 20, 2010, Simms subjected Jiminez to an intensive training session in order to prepare for this tournament.

Plaintiff asserts that Jiminez informed Simms during this practice that he was having trouble breathing but that Simms

6

forced Jimenez to continue to train. After Jiminez was allowed to leave the ring, he collapsed on the floor on two occasions, though no medical attention or help was offered from Simms. Jiminez finally made it back ringside and his condition continued to deteriorate; Simms ignored Jiminez's complaints and the concerns of his Team members about Jiminez and continued the training session with the other team members.

After Jiminez lost vision and consciousness, his team members, not Simms, called for an ambulance. During this period, Coach Simms continued his training practice, ignoring Jiminez's dire medical condition. Jiminez was ultimately airlifted to Vidant Medical Center in Greenville, North Carolina, where he died on March 28, 2010 from a closed-head injury.

### COURT'S DISCUSSION

I. **Standard of Review**

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either assert the complaint fails to state facts upon which subject matter jurisdiction may be based or attack the existence of subject matter jurisdiction

7

in fact, apart from the complaint. Adams, 697 F.2d at 1219. The latter type of attack is used when a court's limited jurisdiction precludes hearing the case brought. Id. Since the court's power to hear the case is at issue in a Rule 12(b)(1) motion, the court is free to weigh the evidence to determine the existence of jurisdiction. Id.

### A.  *Certification*

The Westfall Act, 28 U.S.C. § 2679(d), authorizes the United States Attorney General to certify that a federal employee was acting within the scope of his employment at the time of the incident giving rise to the plaintiff's claim. Upon certification, a case filed in state court is removed to federal district court, the United States is substituted as the party defendant in place of the federal employee, and the case is then governed by the FTCA. 28 U.S.C. § 2679(d)(2). The United States's certification and substitution under the Westfall Act is conclusive absent some rebuttal by the plaintiff. Martinez v. DEA, 111 F.3d 1148, 1153 (4th Cir. 1997).

When a plaintiff challenges a certification, the certification constitutes prima facie evidence that the federal employee was acting within the scope of his employment, and the burden shifts "to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." Id. A plaintiff meets

8

this burden by coming forward with "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision." Id. at 1155. Then the court reviews the matter de novo. See Lee v. United States, 171 F. Supp. 2d 566, 573 (M.D.N.C. 2001). The case has reached this stage, thus the court will examine the evidence de novo. The burden is now on the government to "provide evidence and analysis to support its conclusion that the torts occurred within the scope of employment." Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997).

As an initial matter, plaintiff challenges the government's characterization of Simms as a federal employee, arguing that he was an independent contractor. See 28 U.S.C. §§ 1346(b)(1), 2671. The FTCA states that "[e]mployee of the government" includes the following:

> officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

28 U.S.C. §2671. The FTCA incorporates the "common-law distinction between contractors and employees or agents." Robb v. United States, 80 F.3d 884, 888 (4th Cir. 1996).

The government has provided overwhelming evidence as to its employment of Simms. It hired Simms, promoted him, provided

salary and benefits, and supported the Team. Plaintiff argues that Simms was not controlled enough by his supervisor, Meyerson, and was actually an independent contractor employed by USAB. This argument is untenable. Plaintiff relies heavily on cases which evaluate whether a person hired as a contractor was acting as an agent of the United States. USAB is a professional organization for boxing coaches and teams to join, not an employer of coaches such as Simms, who worked for the United States Marine Corps, according to the evidence shown. Thus, the court finds Simms was an employee of the government and turns to whether Simms was acting within the scope of his employment.

In determining whether a certification should stand, "the district court must apply the law of the state in which the alleged tort occurred to ascertain whether the federal employee was acting within the scope of his employment." Borneman v. United States, 213 F.3d 819, 827 (4th Cir. 2000). North Carolina's scope of employment test examines whether "an employee, at the time of the incident, [acted] in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment;" or "whether he stepped aside from his employment to commit a wrong prompted by a spirit of vindictiveness or to gratify his personal animosity or to carry out an independent purpose of his own." Medlin v. Bass, 398

S.E.2d 460, 463 (N.C. 1990) (internal citations and quotation marks omitted).[4]

Here, Simms's position as amateur boxing coach of the Team called for Simms to identify and develop active duty marines to participate in amateur boxing competitions with the approval and in coordination with headquarters and the Athletic Director. At the time of Jimenez's injuries, Simms was training Marine Corps boxers, including Jimenez, at the Marine Corps gymnasium located in Camp Lejeune, North Carolina. On March 20, 2010, Jimenez sparred and drilled under Simms's tutelage in preparation for an upcoming boxing tournament. Thus, Simms was acting to further the goals of his employer to accomplish the duties of his employment. See Medlin, 398 S.E.2d at 463. As such, Simms was acting within the scope of his duties as amateur boxing coach at the time of Jimenez's injuries. Thus, the government's certification pursuant to the Westall Act is proper, and the court will not reinstate Simms as a defendant.

### B. Exhaustion of Remedies

Claims against the United States may only be brought before this court after a plaintiff has exhausted her administrative remedies. See 28 U.S.C. § 2401(b) (requiring presentation in

---

[4] In North Carolina this question is reserved for a jury. However, the court may resolve this issue for the purposes of determining jurisdiction pursuant to Rule 12(b)(1). See Adams, 697 F.2d at 1219.

11

writing to appropriate federal agency within two years of claim's accrual); <u>Gould v. United States Dept. of Health & Human Servs.</u>, 905 F.2d 738, 742 (The FTCA "specifically requires an initial presentation of a claim to the appropriate federal agency within two years of the accrual of the cause of action and a final denial by that agency as a jurisdictional prerequisite to suit under the Act.")

In this case, plaintiff did not file an administrative claim with the Department of the Navy[5] related to the incidents alleged in the complaint within the two year statute of limitations period dictated by the FTCA. In fact, plaintiff has presented no evidence that she has filed such a claim at any time. Accordingly, the court lacks jurisdiction to hear plaintiff's claims against the government, and the government's motion to dismiss is granted.

---

[5] The Department of the Navy is the appropriate agency in this case as the Marine Corps is a unit within that department.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss is GRANTED, and the United States is terminated as a party in this lawsuit. Defendant United States Amateur Boxing, Inc. remains a party to this action. This matter is referred to United States Magistrate Judge Robert B. Jones, Jr. for entry of a scheduling order.

This 4TH day of March 2014.

Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#33